COBB and others vs. SMITH and others.

SAME vs. SAME.

NEWELL vs. SMITH and others.

*Injuries from mill-dam: Remedies—When action considered one to abate— Effect of prayer for general relief—Enjoining suit to abate.*

1. One whose land is flowed by a dam across a navigable stream may have his remedy in an action at law, either by a recovery of damages only, or by a further judgment abating the dam as a private nuisance (under § 1, chap. 144, R. S.)

2. But the action should not be considered one to abate a nuisance *unless the complaint demands that judgment,* although the facts stated may entitle plaintiff to that relief.

3. Where a court of equity would refuse to restrain the building of a dam, on the ground that plaintiff had acquiesced in its construction and maintenance, and that important interests had grown up around it which would be injured by such a decree, it may for the same reasons (under the Code) refuse judgment to abate as a nuisance, and grant as positive relief to defendants a perpetual injunction against the prosecution of a suit for that purpose.

4. But such relief can be granted to defendants only where the abatement of the dam as a private nuisance is demanded in the complaint; and the counter equities are set up and the injunction demanded in the answer.

5. The complaint in this case contained no *specific* demand of judgment, except for damages, though it added the prayer for *general relief* usually found in bills in equity. After verdict fixing the damages, plaintiff procured a judgment to be signed by the clerk, which provided also for abating the dam. *Held,* that this part of the judgment should be stricken out on defendants' motion.

APPEAL from the Circuit Court for *Rock* County.

The plaintiffs, in each of these cases, appealed from an order of the circuit court modifying a judgment in their favor which had been entered by the clerk. The case will appear from the opinion.

Cobb and others vs. Smith and others.

*Conger & Sloan*, for appellants:

1. The judgments were properly entered. (1.) It was the clerk's duty to enter such a judgment in each case as the plaintiffs were entitled to under the pleadings and verdict. R. S. chap. 132, §§ 16, 35. By § 1, chap. 144, R. S., the right to recover damages for a nuisance is recognized as existing, and the remedy is extended so as to give the plaintiff the relief which he could formerly obtain only by a writ of nuisance (3 Blacks. Com. 220–222; 2 Burr. Pr. 359; 1 Denio, 436; 4 id. 306); the section providing that in such actions, " when the plaintiff prevails, he shall, *in addition* to the usual judgment for damages and costs, also have judgment that the nuisance be abated and removed." Counsel further argued, that there was nothing in the decision in *Cobb v. Smith*, 16 Wis. 661, which denied plaintiff's right to abate the dam as a nuisance by means of an action at law. (2.) It was not irregular to enter the judgment without costs, and before notice of taxation. *Coates v. Smith*, 29 How. Pr. 326. (3.) It was not necessary that the precise relief granted should have been specifically demanded in the complaint. R. S. chap. 132, §§ 26, 29, and chap. 144, § 1; 2 Kern. 336; 26 Barb. 356; 30 id. 641; 20 N. Y. 62; 20 Wis. 540.

*Matt. H. Carpenter*, for respondents:

The pretended judgments in these cases, as to the particular in question, had never been ordered by the court, judge or referee; and the clerk had no authority to sign them. R. S., chap. 132, §§ 16, 32. 2. Section 1, chap. 144, R. S., relates to " actions for a *private* nuisance." This dam, if a nuisance at all, was a *public* nuisance. 3. This court had already decided that the dam could not be abated. *Cobb v. Smith*, 16 Wis. 661.

PAINE, J. These three appeals present the same question, and will be disposed of together. The actions were brought for a flowing of the lands of the plaintiffs by means of a dam

erected and maintained by the defendants. The litigation has already been twice before this court. In *Newell v. Smith*, 15 Wis. 101, it was decided that the act purporting to allow the defendants to flow the lands of others, was unconstitutional, because it did not make any adequate provision for compensation. In *Cobb v. Smith*, 16 Wis. 661, it was decided that the plaintiffs were not entitled to maintain an equitable suit to prevent the reconstruction of the dam, by reason of their long acquiescence in its maintenance, and in the erection of valuable mills and improvements depending on it for their power. And it was said that for the damage occasioned by the flowing, the plaintiffs had "their common-law remedy." ·

It seems that the complaints were then amended, so as to turn them into actions for damages, and the cases proceeded to trial, and the plaintiffs had verdicts fixing the amounts of damages respectively. On these verdicts the counsel for the plaintiffs procured the clerk to sign judgments, not only for the damages and costs, but also directing the sheriff to abate the dam. Applications were then made by the defendants to set aside the latter provision in each judgment, upon affidavits showing substantially the same facts as to acquiescence and the erection of valuable mills, etc., that appeared in the equity case above referred to, and also showing that this feature of the judgment was a surprise upon the defendants, who did not suppose that any such relief was sought in the action, and that the attention of the court was not called to it, nor was that of the defendant's counsel, and that the clerk supposed, when he signed the judgments, that they were only judgments for the damages and costs in pursuance of the verdicts. The court below granted the applications, and from those orders these appeals are taken. Its decision was based entirely, as appears from the opinion printed in the case, upon the decision of this court in the equity case above cited. And the counsel for the appellants have shown, that it does not follow from that decis-

ion that the action of the court below, now under considera-
tion, was proper. There is undoubtedly a wide difference
between a court of equity saying that it will not lend its aid
to enforce a legal right, where there are equitable reasons for
its refusal, and a court of law saying that a party who recov-
ers in an action at law shall not have such a judgment as the
law directs. In the one case the court has a discretion, based
upon those equitable principles and considerations upon which
the system of equitable jurisprudence was built up, which
entitles it to refuse its peculiar relief in cases where it would
cause oppression and injustice. But a court of law has no dis-
cretion, resting upon such considerations, to refuse to any party
such a judgment as the law provides for, in an action wholly
at law. If, therefore, these actions, in the form which they
finally assumed, are to be regarded, as the court below inti-
mated, as actions for a private nuisance, within the meaning
of section 1, chapter 144, R. S., then I do not think it would
follow that the plaintiffs were not entitled to the judgment
there provided for, because this court had decided, that, for the
reasons already mentioned, a court of equity would not inter-
fere by injunction to prevent the reconstruction of the dam
after it had been carried out by a flood.

But I do not think these actions should be regarded as actions
for a private nuisance, within the meaning of that section. The
injury complained of is undoubtedly a private nuisance, and
the plaintiffs might have proceeded for the purpose of abating
the nuisance, if they had seen fit. But they were not bound to
do so. They were at liberty to bring their actions merely for
the recovery of the damages; and this, I think, is what they
have done. It is true, the facts showing the injury to the land
are all stated, and with sufficient particularity to warrant a
prayer for the abatement of the dam as a nuisance. But the
complaints did not contain any such prayer. No such relief
was asked. And under the present system of practice, which

requires the plaintiff to state in his complaint the relief he desires, I do not think an action should be regarded as an action to abate a nuisance, unless that relief is demanded in the complaint. This court has decided, in *Gillett v. Treganza*, 13 Wis. 472, that where the facts stated in a complaint might sustain several different kinds of action, the prayer for relief will be held to determine the character of the action. And the decision is applicable here. The plaintiffs asked only for damages, and that makes the actions, actions for damages only, although, upon the same facts, the plaintiffs might have been warranted in asking to abate the dam.

In Abbott's Forms, vol. 1, p. 474, a form for a complaint in such an action is given, where such relief is expressly asked. Such a prayer was in the complaint in *Cromwell v. Lowe*, 14 Ind. 234, though under their statute the court had a discretion to abate or not. But, without any express authority upon the point, our statute, requiring the plaintiff to state what relief he desires, is amply sufficient to show that, if he does not ask to have the dam abated, the action should not be considered as brought for that purpose.

An action for a private nuisance, within the meaning of the section of the statute above referred to, should be held to be only an action the object of which is to abate the nuisance. That such was its intent is clear from the fact that it provides that, in such cases, the judgment shall be that the nuisance be abated. And, under the present practice, an action cannot be considered of that character unless that relief is demanded in the complaint. Where such relief is sought, it is usually by far the most important object of the suit; and where the plaintiff omits to ask for any such relief, the defendant has a right to assume that the action is not an action for a nuisance within the meaning of that statute.

The justice and propriety of this ruling seem obvious, and this case fully illustrates it. The complaint asking nothing but

damages, the defendants were thrown off their guard. They justly concluded that they were not called on to defend against any other claim. They therefore neglected to set forth in their answer such facts as might have entitled them to the affirmative interference of a court of equity to prevent the plaintiffs from enforcing their legal right to the abatement of the nuisance. That upon a sufficiently strong case, a court of equity ought so to interfere, I have no doubt. The same principles which induce it to refuse its own aid to the party whose land is flowed, where he has acquiesced for a long time in the maintenance of the dam, and in the erection of valuable mills and improvements dependent upon it, ought to induce it to give affirmative assistance to the other party, to prevent the assertion of a strict legal right, of trifling value, to the destruction of great and valuable interests that have grown up on the faith of such acquiescence. Undoubtedly the court should attach just conditions to such relief, and should compel the payment of all that the land-owner ought in equity to receive. But having done this, it should prevent him from asserting his legal right to abate the dam at the expense of such injustice and hardship to others. The cases establishing the principles upon which courts of equity refuse their own aid in such instances, are cited in *Sheldon v. Rockwell*, 9 Wis. 166. And the following sustain the conclusion that the court would not only refuse its own aid, but would affirmatively interfere to prevent the party from asserting his strict rights at law, in a proper case: *Sprague v. Steere*, 1 R. I. 259; *Trenton Banking Co. v. McKelway*, 4 Halst. Ch. 84. The case from Rhode Island was itself a case of the former class, but it refers approvingly to several old cases of the latter. Under the old practice, the mode of obtaining this relief would have been by a separate equitable suit. Under the present, it could be obtained in the suit at law, but only by setting up the facts in the answer, and asking it as affirmative relief. Hence the ne-

cessity of indicating in the complaint the kind of relief sought by the plaintiff, that the defendant may have a fair opportunity to defend against it, or any part of it.

I attach no importance to the fact that these complaints contained the old equitable prayer for general relief. Such a prayer is inappropriate to a complaint in an action at law, and does not tend in any manner to supply the place of a specific demand of particular relief, which, if sought, gives character to the whole action.

If these complaints had asked for this relief, and the defendants had neglected to plead and present any equitable defense they might have had, they could not have been relieved on these motions. The judgments would then have been proper. But as they did not ask for it, and as the actions, for that reason, could not fairly be regarded as being brought to abate the nuisance, the defendants were not called on to defend against that relief, and that part of the judgments may well be regarded as a surprise upon them, from which they were entitled to relief on motion.

For these reasons, I think the orders appealed from should be affirmed.

*By the Court.*—Orders affirmed.